UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| TRANSAMERICA LIFE INSURANCE | ) |
| COMPANY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:12-CV-1253 CAS |
| | ) |
| LISA LAMBERT, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This statutory interpleader matter is before the Court on plaintiff Transamerica Life Insurance Company, Inc.'s ("Transamerica") Motion to Dismiss Plaintiff and Discharge Liability on Fund, which includes a request for its attorneys' fees. Defendant Lisa Lambert, individually and as next friend for plaintiffs MBC, CAC, CBC, KRC and CSC, does not oppose Transamerica's dismissal from the action and discharge from liability, but challenges as unreasonable the amount of attorneys' fees it seeks. Defendants Jennifer Rios, Teresa Roths and Ruth Cornett adopt Lambert's position in full. Transamerica has filed a reply and this matter is ready for decision.

**Background**

Transamerica filed this interpleader action to avoid multiple liability on the competing claims of the defendants to benefits under a One Million Dollar ($1,000,000) life insurance policy (the "Policy") by it and payable as a result of the death of the insured, Mr. Craig A. Cornett, on May 2, 2012. Defendant Lambert is the former spouse of Mr. Cornett, and is the next friend of plaintiffs MBC, CAC, CBC, KRC and CSC, Mr. Cornett's minor children. Defendant Jennifer Rios is also a former spouse of Mr. Cornett and was the last designated beneficiary under the Policy. Defendant Teresa Roths is the sister of Mr. Cornett, and defendant Ruth Cornett is his mother. Roths was at

one time designated as the Policy's beneficiary and Ruth Cornett was the 100% contingent beneficiary at that time. The defendants have made competing claims to the Policy proceeds, and defendant Lambert alleges that Mr. Cornett did not have the legal capacity to amend the designated beneficiaries under the Policy. Faced with these claims, Transamerica instituted this action and filed a motion to deposit the Policy proceeds into Court. The motion was granted, and Transamerica paid into the Court registry the sum of One Million One Thousand Seventy-Two Dollars and Seventy-Four Cents ($1,001,072.74), consisting of the Policy's death benefit due and a premium refund of $1,072.74.

**Discussion**

"The purpose of an interpleader action is to shield a disinterested stakeholder from the costs of having to defend against multiple suits, and from the risk of multiple liability or inconsistent obligations when several claimants assert rights to a single stake. See Dakota Livestock Co. v. Keim, 552 F.2d 1302, 1306-07 (8th Cir. 1977)." Metropolitan Life Ins. Co. v. Bracy, No. 4:99-CV-1123 CAS, slip op. at 3 (E.D. Mo. Nov. 7, 2000). "Where a stakeholder is disinterested and has deposited the stake into the Court registry, the Court may dismiss it from the interpleader action, leaving the claimants to prosecute their conflicting claims." Id.

It is undisputed that Transamerica has deposited the Policy proceeds into the Court registry, and asserts no claim to the proceeds. The Court therefore concludes that Transamerica should be dismissed from this action and that its unopposed motion to be discharged from liability on the funds should be granted. Transamerica also seeks attorneys' fees of $22,982.50 and costs of $1,641.31.

   1. Attorney's Fees

It is within the Court's discretion to award reasonable attorney's fees to a disinterested stakeholder in an interpleader action from funds deposited in the Court registry. See Millers Mut.

Ins. Ass'n v. Wassall, 738 F.2d 302, 304 (8th Cir. 1984). A disinterested stakeholder "should not ordinarily be out of pocket for the necessary expenses and attorney's fees" it incurred in filing the interpleader action. Hunter v. Federal Life Ins. Co., 111 F.2d 551, 557 (8th Cir. 1940). "In the usual case the fee will be relatively modest, inasmuch as all that is necessary is the preparation of a petition, the deposit in court or posting of a bond, service on the claimants, and the preparation of an order discharging the stakeholder." Stonebridge Life Ins. Co. v. Litherland, 2011 WL 743753, at *2 (E.D. Mo. Feb. 23, 2011) (quoting 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1719 (3d ed. 1998)).

A fee award "should be limited to compensation for those services strictly related to the interpleader itself" and should not include attorney time "devoted to limiting the liability of their own client" or in briefing the attorney's fee issue. Equifax, Inc. v. Luster, 463 F. Supp. 352, 357 (E.D. Ark. 1978), aff'd sub nom Arkansas Louisiana Gas Co. v. Luster, 604 F.2d 31 (8th Cir. 1979) (per curiam).

This Court applies the lodestar method of determining a reasonable attorney fee from Hensley v. Eckerhart, 461 U.S. 424 (1983), in the context of a statutory interpleader action. See Stonebridge, 2011 WL 743753 at *3; see also 4 James Wm. Moore, et al., Moore's Federal Practice § 22.06 (3d ed. 2012) (federal law should apply to attorneys' fees issues in statutory interpleader cases). Under Hensley, "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002) (citing Hensley, 461 U.S. at 433). The onus is on the party seeking the award to provide evidence of the hours worked and to support the rate claimed. Id. at 433. "The district court should also exclude from this initial fee calculation hours that were not 'reasonably expended.'" Hensley, 461 U.S. at 434. Once the lodestar amount

3

has been determined, the Court may consider several other factors to determine whether the fee should be adjusted upward or downward, although "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." Hensley, 416 U.S. at 434 & n.9.[1]

"When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005). Transamerica seeks reimbursement for the services of its Armstrong Teasdale, LLP attorneys at the rates of $525 per hour for partner Edward R. Spalty (16.3 hours); $350 per hour for partner Darren K. Sharp (37.5 hours); $275 per hour for associate Teresa Lynch (4 hours); and $250 per hour for associate Darryl Chatman (.8 hours). Messrs. Spalty and Sharp are from Armstrong's Kansas City, Missouri office and Ms. Lynch and Mr. Chatman are from its St. Louis, Missouri office. The Court notes that missing from the record is evidence of the prevailing rates in the communities for attorneys of the experience and reputation of Mr. Spalty, Mr. Sharp, Ms. Lynch and Mr. Chatman, see Stonebridge, 2011 WL 743753, at *3, other than self-serving, conclusory assertions in the affidavit of Mr. Sharp.

The defendants do not take issue with the skills of Transamerica's lawyers, but assert that it was Transamerica's unilateral choice to "employ counsel at excessively high rates to perform what

---

[1] Other factors the court may consider are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney(s); (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) (limited by Blanchard v. Bergeron, 489 U.S. 87 (1989)).

amount to simple tasks," and contend it would be unjust to impose such rates on them, the ultimate recipients of the interpleaded funds, for performance of the routine skills required to interplead the funds in this matter.

Based on the Court's knowledge of prevailing market rates in the St. Louis area, the $525 hourly rate charged by Mr. Spalty approaches but does not reach the high end of large firm rates here, and Mr. Sharp's rate is not atypical for a large-firm partner with fifteen years' experience. While the hourly rates charged by Mr. Spalty and Mr. Sharp may be what the market will bear for attorneys of their experience and skill, the Court finds the rates are excessively high in the context of the skills required to file an interpleader action of this type. As the defendants observe, it was Transamerica's unilateral choice to utilize high-priced counsel to perform work that did not require such experience or expertise. Accordingly, the Court will reduce the hourly rate for Mr. Spalty to $350 and for Mr. Sharp to $300. Cf. Stonebridge, 2011 WL 743753, at *4 (approving attorney's fees for experienced partner in statutory interpleader action at $295 per hour). Transamerica has provided no information concerning the experience or qualifications of associates Ms. Lynch and Mr. Chatman. As a result, the Court will reduce those rates to $215 per hour to conform to its prior decisions. Cf. Stonebridge, 2011 WL 743753, at *4 (approving attorney's fees for sixth-year associate at $215 per hour).[2]

The Court now examines whether any of the hours charged were not strictly related to the interpleader, or were "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. The defendants challenge several aspects of the hours charged as excessive, specifically 5.6 hours

---

[2]Based on the adjustment to the hourly rates, the attorneys' fees sought by Transamerica are reduced to $17,987 (16.3 hours at $350/hour for Mr. Spalty; 37.5 hours at $300/hour for Mr. Sharp; and 4.8 hours x $215/hour for Ms. Lynch and Mr. Chatman).

5

to prepare a five-page interpleader complaint; and 13.4 hours drafting Transamerica's motions to deposit funds with the Court and seeking payment of fees and discharge from liability. The defendants do not suggest how much time would have been reasonable for these tasks. The defendants also challenge as unnecessary 1.1 hours spent discussing and reviewing Mr. Cornett's death certificate where there was no issue concerning the insured's death; 3.9 hours relating to a motion for protective order that was never filed, including .2 hours for "correspondence to opposing counsel re Protective Order" that defendants' counsel state they never received; and .4 hours for preparing a Reply brief and exhibits for filing where no "reply brief" was filed by Transamerica in this action.

Transamerica responds to all of the defendants' points, except the 13.4 hours expended for drafting its motions to deposit funds with the Court and seeking its fees and discharge from liability. The Court has carefully considered each contested time entry, and has reviewed the billings records and overall time expended by Transamerica's attorneys. For the reasons stated by Transamerica, the Court will allow time for review of the death certificate, preparation of the protective order (which was filed in the case after briefing on the instant motion was completed), and the time expended on October 8, 2012 to prepare a "reply brief," as the Court is satisfied this time was expended with respect to the motion to deposit funds.

Transamerica argues that 5.6 hours expended preparing the interpleader action includes, in addition to drafting the complaint, assessment and analysis of the law governing interpleaders, the minimal good faith basis of interpleader actions, whether further liability could be incurred by Transamerica by filing an interpleader action, review and analysis of Transamerica's several-hundred page claim file, and analysis of what parties should be included in the action and whether they could be located and served. This argument would be more persuasive if it was supported by

6

citation to corresponding narrative time entries, rather than entries such as "Prepare complaint for interpleader." Further, other time entries that are not included in the 5.6 hours attributed to preparation of the interpleader complaint appear to account for some of these activities; for example, review and analysis of the Transamerica file (2.6 hours on July 11-12, 2012); analysis of case law regarding good faith interpleader (.8 hours on July 16, 2012); work on service issues (1.4 hours on July 17, 2012, and July 22, 2012). The Court finds that 19 hours expended in preparing the interpleader complaint and the motions to deposit funds is excessive, and will reduce the time by 5 hours at $300 per hour, for a reduction of $1,500.

2. Costs

Finally, the Court reviews Transamerica's request for its costs expended, which is governed by Rule 54(d), Fed. R. Civ P., see 4 Moore's Federal Practice § 22.06, and 28 U.S.C. § 1920. Stonebridge, 2011 WL 743753, at *4. Allowable costs in most cases are limited to the categories set forth in 28 U.S.C. § 1920. Expenses not on the statutory list must be borne by the party incurring them. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987). The Court must carefully scrutinize the claimed costs and the support offered for them. Farmer v. Arabian American Oil Co., 379 U.S. 227, 232-33, 235 (1964); Alexander v. National Farmers Org., 696 F.2d 1210, 1212 (8th Cir. 1982).

Taxable costs include: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts and interpreters under 28 U.S.C. § 1828.

Transamerica is entitled to costs of $350 for the filing fee and $200 for pro hac vice admission, as fees of the clerk. See Craftsmen Limousine, Inc. v. Ford Motor Co., 579 F.3d 894, 898 (8th Cir. 2009) (pro hac vice fees are recoverable as costs).[3] Although § 1920 authorizes recovery of fees of the marshal, the Eighth Circuit has held that the statute does not contain a provision for recovery of fees paid to a private process server. Crues v. KFC Corp., 768 F.2d 230, 234 (8th Cir. 1985). Although the Crues decision has been criticized, it remains binding precedent that this Court must follow. See Marez v. Saint-Gobain Containers, Inc., 2011 WL 1930706, at *15 (E.D. Mo. May 18, 2011); see also Bunda v. Potter, 2006 WL 266513, at **3-6 (N.D. Iowa Jan. 31, 2006). As a result, Transamerica cannot recover its claimed $129 cost for service of process.

Transamerica also seeks costs for copy expenses. Amounts sought for copy expenses must be documented or itemized in such a way that the Court can meaningfully evaluate the request. Yaris v. Special School Dist. of St. Louis County, 604 F. Supp. 914, 915 (E.D. Mo. 1985), aff'd, 780 F.2d 724 (8th Cir. 1986). Transamerica provides only the date on which the copies were made and the number of pages. This is insufficient for the Court to determine whether the copies were "necessarily obtained for use in the case," so all copy costs are disallowed.

Transamerica may not recover costs for messenger service and Westlaw legal research, as these miscellaneous types of expense do not fall within any category enumerated in §1920 and are not taxable. See Pinkham v. Camex, Inc., 84 F.3d 292 (8th Cir. 1996) (costs for messenger service are not taxable); Leftwich v. Harris-Stowe State Coll., 702 F.2d 686, 695 (8th Cir.1983) (Eighth Circuit does not permit taxation of computer-aided research as an item of cost).

---

[3]The Court will disallow a claimed $36 "filing fee" from July 17, 2012, as there is no information in the record to support this fee, and the Court cannot determine what it was for.

**Conclusion**

For the foregoing reasons, Transamerica's Motion to Dismiss Plaintiff and Discharge Liability on Fund will be granted. Transamerica is entitled to recover from the funds deposited in the Court Registry its attorneys' fees in the amount of $16,487 (the adjusted sum of $17,987 less $1,500), and costs in the amount of $550, for a total of $17,037.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Transamerica Life Insurance Company, Inc.'s Motion to Dismiss Plaintiff and Discharge Liability on Fund is **GRANTED**. [Doc. 33]

**IT IS FURTHER ORDERED** that plaintiff Transamerica Life Insurance Company, Inc. shall prepare and file a proposed disbursement order for the payout of Seventeen Thousand Thirty-Seven Dollars ($17,037) for its attorneys' fees and costs, see E.D. Mo. Local Rule 13.04(D)(2), and shall send a copy of the proposed order to the Court's proposed orders e-mail box, see Administrative Procedures for Case Management/Electronic Case Filing, § II.J, with the case name and number (including judge's initials) in the subject line.

A preliminary order in interpleader and for dismissal and discharge will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  29th  day of January, 2013.